# United States Navy–Marine Corps Court of Criminal Appeals

Before
MONAHAN, STEPHENS, and DEERWESTER
Appellate Military Judges

———————————

**UNITED STATES**
*Appellee*

**v.**

**Malcolm E. SPEIGHT**
Corporal (E-4), U.S. Marine Corps
*Appellant*

**No. 202000099**

Decided: 30 March 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
John P. Norman (arraignment and trial)
Stephen F. Keane (motions)

Sentence adjudged 2 March 2020 by a general court-martial convened at Marine Corps Air Station Yuma, Arizona, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 9 months, and a bad-conduct discharge.[1]

For Appellant:
*Lieutenant Commander Jonathan Riches, JAGC, USN*

———————————

[1] The military judge awarded a dishonorable discharge and 18 months confinement. However, the convening authority suspended confinement in excess of 9 months and approved only a bad-conduct discharge pursuant to a pretrial agreement.

For Appellee:
*Lieutenant Commander Jeffrey S. Marden, JAGC, USN*
*Major Clayton L. Wiggins, USMC*

Chief Judge MONAHAN delivered the opinion of the Court, in which Senior Judge STEPHENS and Judge DEERWESTER joined.

————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

————————————

MONAHAN, Chief Judge:

Appellant was convicted, pursuant to his pleas, of one specification of assault consummated by a battery, one specification of assault consummated by a battery upon a spouse, and one specification of aggravated assault by strangulation, in violation of Article 128, Uniform Code of Military Justice [UCMJ].[2]

Appellant asserts one assignment of error: he should have been awarded 66 days of confinement credit for pretrial confinement on unrelated charges that were later dismissed. We find no prejudicial error and affirm.

## I. BACKGROUND

Following an investigation conducted by the Naval Criminal Investigative Service [NCIS], multiple charges against Appellant were preferred and later referred to a general court-martial [GCM], for acts of domestic abuse that Appellant committed against his wife from August 2017 through February 2019. Appellant was not ordered into pretrial confinement based on these charges.

Several months later, Appellant received non-judicial punishment [NJP] for unrelated misconduct: two specifications of being absent without leave and one specification of wrongful use of marijuana. Appellant's punishment

---

[2] 10 U.S.C. § 928.

consisted of reduction in rank to E-4, forfeiture of $1,277.00 pay per month for two months, and 60 days of restriction.

Approximately two weeks later, Appellant was ordered into pretrial confinement after he was caught wearing civilian attire while on restriction and evidence surfaced of his continued drug abuse. Charges related to this additional misconduct were subsequently referred to a special court-martial [SPCM]. Appellant remained in pretrial confinement for 66 days, until the date of his GCM guilty plea and sentencing for the domestic violence charges. Appellant's SPCM charges were withdrawn and dismissed three days later. During Appellant's GCM guilty plea and sentencing hearing, his civilian defense counsel [CDC] explicitly and repeatedly agreed that his pretrial confinement was unrelated to the case at hand and, thus, did not merit the awarding of confinement credit.

## II. DISCUSSION

### A. Appellant Affirmatively Waived the Issue of Pretrial Confinement during His Guilty Plea Hearing

Whether an appellant has waived an issue is a legal question that this Court reviews de novo.[3]

"In absence of an explicit prohibition, a party may knowingly and voluntarily waive . . . a nonconstitutional right in a [pretrial agreement]."[4] "When . . . appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal."[5] This is for good reason, as "the purpose of the so-called raise-or-waive rule is to promote efficiency of the entire justice system by requiring the parties to advance their claims at trial, where the underlying facts can best be determined."[6]

Throughout the GCM guilty plea and sentencing hearing, CDC made it clear that Appellant did not seek confinement credit for his time in pretrial confinement. Prior to the entry of pleas, when the military judge asked for confirmation "that there was no pretrial confinement credit under *U.S. v.*

---

[3] *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020).

[4] *United States v. Gladue*, 67 M.J. 311, 314 (C.A.A.F. 2009).

[5] *Id.* at 313.

[6] *United States v. King*, 58 M.J. 110, 114 (C.A.A.F. 2003).

*Allen*[7] that needed to be adjudged or ordered," CDC concurred that there was not.[8] Later, at the start of the presentencing hearing, the military judge confirmed that CDC agreed Appellant was not entitled to any pretrial confinement credit for the unrelated charges.[9] Furthermore, when CDC sought to enter Appellant's Prisoner Evaluation Reports as sentencing evidence, he specified that their purpose was for extenuation and mitigation evidence, rather than to claim confinement credit. The CDC and military judge had the following exchange:

> CDC: [W]e are simply offering them for [extenuation and mitigation] with regard to consideration of what an appropriate sentence would be in the collection of the whole, as opposed to *Allen* credit specifically for these offenses.

> MJ: Very well. I understand the purpose offered and will consider them as mitigation in this case as to every-thing that's going on in the accused's life not just—but not as anything related to *Allen* credit or pretrial con-finement for this case.[10]

Thus, Appellant did not merely fail to raise the issue, which would have resulted in a forfeiture of the right. Rather, he affirmatively waived the issue by consciously and deliberately declining to seek the credit.

Recently, in *United States v. Haynes*, the Court of Appeals for the Armed Forces [CAAF] determined that the appellant waived any entitlement to credit under *United States v. Pierce*[11] after his defense counsel affirmatively agreed with the military judge's pretrial confinement credit calculation. CAAF observed, "This is not simply a case where defense counsel failed to lodge an objection. Instead, the military judge directly asked defense counsel if he agreed with the proposed amount of confinement credit and defense counsel expressly indicated that he did."[12] Although the question in *Haynes*

---

[7] *United States v. Allen*, 17 M.J. 126 (C.M.A. 1984).

[8] R. at 76-77.

[9] *Id.* at 176.

[10] *Id.* at 185-86.

[11] *United States v. Pierce*, 27 M.J. 367 (C.M.A. 1989).

[12] *United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019).

revolved around *Pierce*, and not *Allen*, credit, it is clear that our superior court viewed the matter more broadly. It reasoned, "Since *Pierce* credit is a type of confinement credit, we think it appropriate to treat the exchange between the military judge and counsel as one concerning confinement credit in the broad sense."[13] Following the *Haynes* Court's reasoning, we hold that Appellant affirmatively waived the issue of pretrial confinement credit at trial.

Appellant requests that we decline to apply waiver in this case, particularly as he believes the military judge misapplied the law when he did not provide him credit for his pretrial confinement served. Appellant bolsters this argument pointing to the fact that he also submitted the matter of pretrial confinement to the convening authority after the unrelated charges were dismissed. He argues that by doing so, he eliminated the threat that he would receive "double credit" for his time in pretrial confinement.[14]

CAAF held in *United States v. Chin* that we can look past an appellant's waiver of an issue to address an error in the course of performing our plenary review of the record under Article 66, UCMJ.[15] However, as discussed *infra*, we find that there was no misapplication of the law when neither the military judge nor the convening authority gave Appellant credit for pretrial confinement he served for misconduct unrelated to the offenses that were the subject of this court-martial. Thus, we choose to not disregard Appellant's waiver of pretrial confinement credit in this case.

**B. Assuming Arguendo that Appellant did not Waive the Issue of Pretrial Confinement Credit, We Find that He Still would not have been Entitled to Such Credit**

We review the question of whether Appellant is entitled to pretrial confinement credit de novo.[16] Appellant argues he was entitled to pretrial confinement credit under both 18 U.S.C. § 3585(b) and the Rule for Courts-Martial [R.C.M] 1102(b)(2)(B). We disagree with both of those propositions.

---

[13] *Id.* at 20.

[14] Appellant's Reply Br. at 16.

[15] 75 M.J. 220, 222-23 (C.A.A.F. 2016).

[16] *United States v. Smith*, 56 M.J. 290, 292 (C.A.A.F. 2002).

*1. Appellant is not entitled to credit under 18 U.S.C. § 3585(b) because the Defense Sentence Computation Manual no longer applies that statute to servicemembers serving confinement as a result of a court-martial sentence*

Appellant first claims he is entitled to pretrial confinement under 18 U.S.C. § 3585(b), the successor statute to 18 U.S.C. § 3568. According to Appellant, military case law—specifically *United States v. Allen* and its progeny—adopted the protections granted by 18 U.S.C. § 3568, and thus we should similarly adopt those promulgated by 18 U.S.C. § 3585(b). The original statute mandated "the Attorney General shall give any . . . such person [sentenced to imprisonment] credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which the sentence was imposed."[17] The law excluded the military from its applicability, providing an explicit caveat in its definition of 'offense' that precluded "an offense triable by court-martial."[18] However, in *Allen*, the Court of Military Appeals found that the Department of Defense [DoD] *voluntarily* adopted the statute's calculation of pretrial confinement credit, through its issuance of Dep't of Def. Instr. 1325.4, *Treatment of Military Prisoners and Administration of Military Correction Facilities* (Oct. 7, 1968) [DoDI 1325.4].[19]

The instruction directed:

> *Computation of Sentences.* Procedures employed in the computation of sentences will be in conformity with those published by the Department of Justice, which govern the computation of federal prisoners and military prisoners under the jurisdiction of the Justice Department.[20]

Analyzing that section, the *Allen* Court reasoned "we must be judicially prudent and read the instruction as written, as voluntarily incorporating the pretrial-sentence credit extended to other Justice Department convicts."[21]

Since then, as Appellant points out, Congress further expanded 18 U.S.C. § 3568's protections by replacing it with 18 U.S.C. § 3585. This statute kept

---

[17] 18 U.S.C. § 3568 (1966)

[18] *Id.*

[19] 17 M.J. at 127.

[20] *Id.* (quoting DoDI 1325.4, para. 6).

[21] *Id.* at 128.

the military exclusion,[22] but increased the eligibility for confinement credit to include confinement resulting from "*any other charge* for which the defendant was arrested after the commission of the offense for which the sentence was imposed."[23]

Although it is true Congress broadened the scope of the statute's applicability for individuals sentenced in *civilian* federal court, it should not be assumed that the DoD voluntarily incorporated the statute the way it did for its predecessor. The *Allen* court predicated its holding with a disclaimer that they came to its decision "in the absence of any clear signal of intent otherwise on the part of the Secretary of Defense" and that they would read DoD instructions "as they appear on their face."[24] Thus, *Allen's* holding is tied not only to applicable federal statutes, but also to the intent of the DoD, as expressed in its instructions.

Although Appellant is correct that the central holding of *Allen* remains intact—that an accused should receive credit for time spent in pretrial confinement—it is inaccurate to conclude that the circumstances when it was decided remain the same. In the thirty-five plus years since *Allen*, the DoD has indeed provided more guidance regarding confinement credit, particularly through its implementation of the DoD Sentence Computation Manual [DoDM 1325.07].[25] Among other changes, while the previous 1968 instruction specifically incorporated the Department of Justice's sentence computation procedures [prompting the *Allen* court to reach the conclusion it did], the updated version pointedly makes no such mention. Instead the current manual dictates that "the judge will direct credit for each day spent in pretrial confinement or under restriction tantamount to confinement . . . *for crimes for which the prisoner was later convicted*."[26]

---

[22] 18 U.S.C. § 3551(a) ("Except as otherwise specifically provided, a defendant who has been found guilty of an offense described in any Federal statute . . . other than an Act of Congress applicable exclusively in the District of Columbia or the Uniform Code of Military Justice, shall be sentenced in accordance with the provisions of this chapter").

[23] 18 U.S.C. § 3585(b) (emphasis added).

[24] 17 M.J. at 126.

[25] Dep't of Def. Man. 1325.07, *DoD Sentence Computation Manual* (Jul. 27, 2004 & Ch. 3, Sep. 26, 2018).

[26] *Id.* at para. C2.4.2 (emphasis added).

This Court has already held that DoDM 1325.07 answers many of the questions regarding when to apply *Allen* credit, recognizing how the DoD Sentence Computation Manual has narrowed the class of qualifying accused.[27] Much like Appellant here, in *United States v. Atkinson*, the appellant sought credit for a period of confinement resulting from misconduct separate and apart from the misconduct for which he was ultimately convicted.[28] The appellant was declared a deserter after a lengthy period of unauthorized absence. Ultimately apprehended, the appellant spent 62 days at a civilian detention facility before returning to his unit. He then received NJP for that unauthorized absence, but subsequently faced court-martial the following year for entirely separate charges.

On appeal, Atkinson argued that he should have received *Allen* credit for the 62 days he spent in civilian confinement related to his unauthorized absence. We rejected that argument, pointing to the limitations enacted by DoDM 1325.07, and observed, "day-for-day credit is generally due in the military justice system, but for a range of offenses narrower than that applicable to [federal] prisoners."[29] Citing to the provision "that military judges 'will direct credit for each day spent in pretrial confinement . . . *for crimes for which the prisoner was later convicted*,'"[30] we rejected Atkinson's claim that he was entitled to credit for pretrial confinement that was unrelated to his ultimate conviction. We likewise find Appellant's similar claim to be without merit.[31]

---

[27] *United States v. Atkinson*, 74 M.J. 645, 647-48 (N-M. Ct. Crim. App. 2015).

[28] *Id.* at 645.

[29] *Id.* at 648.

[30] *Id.* at 647 (citing to DoDM 1325.7 at para. C2.4.2 (emphasis added)).

[31] It may be argued that *Atkinson* was also bolstered by the fact that his prior confinement was served in a civilian facility. Not only did the plain language of DoDM 1325.07 disentitle the *Atkinson* appellant from earning pretrial credit, his particular form of pretrial confinement was unambiguously denied in DoDM 1325.07's corresponding instruction, which states:

> Notwithstanding any other provision of this instruction or [DoDM 1325.07] if a prisoner (accused) is confined in a non-military facility for a charge or offense for which the prisoner had been arrested after the commission of the offense for which the military sentence was imposed, the prisoner (accused) shall receive no credit for such time confined in the non-military facility when calculating his or her sentence adjudged at court-martial.

*Footnote continued next page.*

*2. Appellant is also not entitled to credit in accordance with R.C.M. 1102(b)(2)*

We also find Appellant's argument that he should have received confinement credit under R.C.M. 1102(b)(2) to be unpersuasive. Appellant points to subsection R.C.M. 1102(b)(2)(C) which specifies five different situations where confinement credit is to be excluded.[32] Confinement served for unrelated misconduct is not among these exceptions, and therefore, Appellant argues, we should infer that he *is* eligible to receive the credit.

---

Dep't of Def. Instr. 1325.07, *Administration of Military Correction Facilities and Clemency and Parole Authority*, encl. 2, para. 3.c (Mar. 11, 2013 & Ch. 4, Aug. 19, 2020).

[32] These exclusions are:

(i) Periods during which the sentence to confinement is suspended or deferred;

(ii) Periods during which the accused is in the custody of civilian authorities under Article 14 from the time of the delivery to the return to military custody, if the accused was convicted in the civilian court;

(iii) Periods during which the accused is in custody of civilian or foreign authorities after the convening authority, pursuant to Article 57(b)(2), has postponed the service of a sentence to confinement;

(iv) Periods during which the accused has escaped, or is absent without authority, or is absent under a parole that a proper authority has later revoked, or is released from confinement through misrepresentation or fraud on the part of the prisoner, or is released from confinement through misrepresentation or fraud on the part of the prisoner, or is released from confinement upon the prisoner's petition for a writ under a court order that is later reversed; and

(v) Periods during which another sentence by court-martial to confinement is being served. When a prisoner serving a court-martial sentence to confinement is later convicted by a court-martial of another offense and sentenced to confinement, the later sentence interrupts the running of the earlier sentence. Any unremitted remaining portion of the earlier sentence will be served after the later sentence is fully executed.

R.C.M. 1102(b)(2)(C).

However, as the Government points out, this logic is problematic. Specifically, it argues a plain language reading of R.C.M. 1102(b)(2)(*B*) contradicts Appellant's reading of 1102(b)(2)(*C*). This rule provides,

> *Calculation.* Any period of confinement included in the sentence of a court-martial begins to run from the date the sentence is announced by the court-martial. If the accused was earlier ordered into confinement under R.C.M. 305, the accused's sentence shall be credited one day for each day of confinement already served.[33]

We read statutes "as a harmonious whole manifesting one general purpose and intent. Just as a single word cannot be read in isolation, nor can a single provision of a statute."[34] While Appellant stresses that R.C.M. 1102(b)(2)(B) states an accused "shall be credited one day for each day of confinement already served," the preceding sentence provides the necessary context to know for *which* confinement this rule applies. Thus, the phrase "confinement already served" relates back to confinement deriving from the court-martial conviction. As such, we find that R.C.M. 1102(b)(2)(B) does not support Appellant's argument that he is entitled to credit for pretrial confinement he served unrelated to the offenses that were the subject of this court-martial.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[35] Accordingly, the findings and sentence are **AFFIRMED**.

---

[33] R.C.M. 1102(b)(2)(B).

[34] *United States v. Quick*, 74 M.J. 517, 520 (N-M. Ct. Crim. App. 2014) (quoting *Smith v. United States*, 508 U.S. 223, 233 (1993)) (internal citation and quotation marks omitted).

[35] UCMJ arts. 59, 66.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court