**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Technical Sergeant SHAUN R. WILKINSON**
**United States Air Force**

**ACM S32218**

**11 May 15**

Sentence adjudged 20 December 2013 by SPCM convened at Fairchild Air Force Base, Washington. Military Judge: William C. Muldoon.

Approved Sentence: Bad-conduct discharge, confinement for 6 months, reduction to E-3, and a reprimand.

Appellate Counsel for the Appellant: Major Jeffrey A. Davis and Captain Travis L. Vaughan.

Appellate Counsel for the United States: Captain Thomas J. Alford and Gerald R. Bruce, Esquire.

Before

MITCHELL, WEBER, and CONTOVEROS
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

WEBER, Judge:

A panel of officer and enlisted members at a special court-martial convicted the appellant, contrary to his pleas, of two specifications of sexual abuse of a child, in violation of Article 120b, UCMJ, 10 U.S.C. § 920b. The members acquitted the appellant of one charge and one specification alleging assault consummated by a battery. The adjudged and approved sentence consisted of a bad-conduct discharge, confinement for 6 months, reduction to E-3, and a reprimand.

On appeal, the appellant raises six assignments of error, challenging various rulings and actions of the military judge, the composition of his panel, and the legal and factual sufficiency of his conviction. We find the appellant's conviction of both specifications of sexual abuse of a child factually insufficient, rendering moot the remaining issues.

*Background*

WO was the appellant's 14-year-old niece. Several members of the family lived in close proximity and saw each other regularly. In particular, WO and WO's grandmother visited the appellant and his wife often.

WO alleged that in late June or early July 2013, she, the appellant, the appellant's wife, and WO's grandmother played Jeopardy! on a gaming system at the appellant's house. During the second game, WO and the appellant were paired up on one couch, with the appellant's wife and WO's grandmother on the other. WO alleged the appellant touched her clothed buttocks during this game while they sat on the couch. WO did not say anything in response to this; her later explanation was that the appellant's wife would not believe her. WO also alleged that the appellant kissed her that night in the hallway, but the members acquitted him of assault consummated by a battery relating to this alleged kiss.

A few days later on the Fourth of July, WO attended a pool party at another nearby relative's house. About 15 people attended the party, including WO's grandmother, the appellant, and the appellant's wife. WO alleged that while she and the appellant were in the pool, the appellant repeatedly dunked her and then grabbed her breast while she was underwater. She stated that when she emerged from the water, she loudly stated, "Shaun gave me a purple-nurple," a statement that would have been audible to at least two adults present. In response, WO testified, the appellant's wife told the appellant that this was inappropriate, and the appellant walked away without saying anything.

The prosecution's evidence at trial centered on WO's testimony; the defense vigorously cross-examined her about inconsistencies between her account at trial and previous statements she had given about the appellant's alleged misconduct. The government called two of WO's family members to testify largely about other actions of the appellant apart from the charged misconduct. The government did not call other family members who were allegedly present during the charged actions.

*Factual Sufficiency*

We review issues of factual sufficiency de novo. *United States v. Beatty*, 64 M.J. 456, 459 (C.A.A.F. 2007).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987), *quoted in United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our factual sufficiency determination is limited to a review of the "entire record," meaning evidence presented at trial. *Reed*, 54 M.J. at 43; *United States v. Bethea*, 46 C.M.R. 223, 225 (C.M.A. 1973).

We have reviewed the record of trial and evaluated the arguments by the appellant and the government. We have evaluated the entire record of trial, and have made allowances for not having heard and observed the witnesses. Having done so, and having considered the unique facts of this case on its merits, we are not personally convinced of the appellant's guilt of either specification of sexual abuse of a child.[1]

It should go without saying that a court-martial is a most serious matter, and the requirement for proof beyond a reasonable doubt plays a vital role in the legitimacy of the military justice system. A "society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt." *In re Winshop*, 397 U.S. 358, 363–64 (1970). In the military justice system, where servicemembers accused at court-martial are denied some rights provided to other citizens,[2] our unique factfinding authority is a vital safeguard designed to ensure that every conviction is supported by proof beyond a reasonable doubt. This authority "provide[s] a source of structural integrity to ensure the protection of service members' rights within a system of military discipline and justice where commanders themselves retain awesome and plenary authority." *United States v. Jenkins*, 60 M.J. 27, 29 (C.A.A.F. 2004). Most cases reviewed by this court are deemed factually sufficient. However, in this instance, we simply are not personally convinced that the appellant is guilty of the charged offenses.

---

[1] In addition to the evidence directly concerning the charged misconduct, we acknowledge that the government presented evidence concerning the appellant's actions toward WO apart from the charged incidents and argued that these actions demonstrated that the appellant had a sexual interest in WO. We find these matters add little to the government's case, and having considered these matters, we remain unconvinced of the appellant's guilt.

[2] *See, e.g., Ex parte Quirin*, 317 U.S. 1, 40–41 (1942) (holding there is no constitutional right to a trial by jury in courts-martial); *O'Callahan v. Parker*, 395 U.S. 258, 265 (1969) (recognizing differences between courts-martial and civilian criminal proceedings and observing that "[a] court-martial is not yet an independent instrument of justice but remains to a significant degree a specialized part of the overall mechanism by which military discipline is preserved.").

*Conclusion*

The findings of guilty and the sentence are set aside and dismissed.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM S32218